IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00050-CR

 

Michael Lee Smith,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 82nd District Court

Falls County, Texas

Trial Court No. 8324

 



MEMORANDUM  Opinion










 

            Michael Smith was convicted of
burglary of a habitation with the intent to commit an assault.  See Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003).  He was sentenced to 20 years in prison.  Smith appealed. 
Smith’s counsel filed an Anders brief.  See Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).  We affirm.

            Counsel’s brief reviews the legal and
factual sufficiency of the evidence, potential error in voir dire, the trial on
the merits, the jury charge, and potential error in the punishment phase of the
trial.  Although counsel and this Court informed Smith of the right to file a
brief, Smith did not file one.  The State did not file a response.

            We must, "after a full
examination of all the proceedings, . . . decide whether the case is wholly
frivolous."  Anders at 744; accord Stafford v. State, 813
S.W.2d 503, 509-11 (Tex. Crim. App. 1991); Coronado v. State, 996 S.W.2d
283, 285 (Tex. App.—Waco 1999, order) (per curiam), disp. on merits, 25
S.W.3d 806 (Tex. App.—Waco 2000, pet. ref'd).  An appeal is "wholly
frivolous" or "without merit" when it "lacks any basis in
law or fact."  McCoy v. Court of Appeals, 486 U.S. 429, 439 n.10, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988).  Arguments are frivolous when they
"cannot conceivably persuade the court."  Id. at 436.  An appeal
is not wholly frivolous when it is based on "arguable grounds." Stafford at 511.

            We determine that the appeal is wholly
frivolous. Accordingly, we affirm. Counsel must advise Smith of our decision
and of his right to file a petition for discretionary review.  See Sowels
v. State, 45 S.W.3d 690, 694 (Tex. App.—Waco 2001, no pet.), overruled
in part on other grounds, Meza v. State, 206 S.W.3d 684, 689 (Tex.
Crim. App. 2006); see also Ibarra v. State, 226 S.W.3d 481, 483 (Tex. App.—Waco 2006, no pet.).  We grant counsel's motion to withdraw filed September 6,
2007.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed January 2, 2008

Do
not publish

[CR25]






160;                                                    

O P I N I O N
                                                                                                                 

      Doyle Cook and his former wife, Darlene, filed a personal injury suit against Sabio Oil and
Gas, Inc. (“Sabio”) seeking damages sustained by Cook as a result of a fall from stairs located on
Sabio’s property. Cook was in the scope of his employment with Pool Company (“Pool”) when
the accident occurred. Planet Insurance Company (“Planet”) insured Pool and intervened in the
lawsuit. Darlene Cook filed a nonsuit. 
      A jury failed to find negligence on the part of Sabio or Cook. The court entered a take nothing
judgment in favor of Sabio based on the verdict. Cook’s motion for new trial was denied.       Cook’s first point of error alleges that the trial court erred by denying his motion for new trial
because the jury verdict was against the great weight and preponderance of the evidence and he was
entitled to a finding of liability as a matter of law. Point of error two urges that the court erred in
overruling his objection to the admission of evidence concerning his marital difficulties and alleged
domestic violence because any relevancy was outweighed by the prejudicial effect. Cook’s third
point of error alleges that the court erred in overruling his motion for new trial based on the
admission of this evidence. The fourth point of error asserts that the court erred in overruling his
motion for new trial because the jury relied on Sabio’s mischaracterization of testimony during final
argument. The fifth point of error asserts that the court erred when it denied Cook’s motion for
mistrial because the cumulative effect of the errors at trial was harmful and caused the rendition
of an improper judgment. 
FACTUAL BACKGROUND
      Sabio contracted with Pool to remove and haul salt water from its tanks. Cook was employed
as a truck driver for Pool. Pool’s drivers removed salt water from Sabio’s tank at the Colbert well
twice a day. The driver would climb the stairs on the side of the tank and check the gauge to
determine how much salt water to remove. The driver would then walk down the stairs and begin
removing the salt water. From time to time, the salt water would overflow the tank and spill onto
the stairs. The stairs were made of metal, and the salt water would corrode and weaken the stairs. 
      On August 21, 1992, Cook went up the stairs to check the gauge. According to Cook, as he
was walking down the stairs a step broke and he fell to the ground. Cook was the only person at
the Colbert well, so there are no other witnesses to the accident. Cook complains of back, neck,
and leg pain due to the fall. Cook brought suit for damages alleging that Sabio was negligent.
SUFFICIENCY OF THE EVIDENCE
      In his first point of error, Cook alleges that the court erred in overruling his motion for new
trial because the jury’s failure to find negligence was against the great weight and preponderance
of the evidence and he established liability as a matter of law. This point of error challenges the
legal and factual sufficiency of the verdict. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983); Crow v. Burnett, 951 S.W.2d 894, 897 (Tex. App.—Waco 1997, pet. denied). 
      In order to preserve a point on legal sufficiency, the appellant must present the argument to
the trial court either: (1) by motion for instructed verdict; (2) by objecting to submission of the
question; (3) by motion for judgment notwithstanding the verdict; (4) by motion to disregard the
contested finding; or (5) by motion for new trial. Aero Energy, Inc. v. Circle C Drilling Co., 699
S.W.2d 821, 822 (Tex. 1985); Crow, 951 S.W.2d at 899. 
      Cook filed a motion for new trial but did not challenge legal sufficiency by either stating that
no evidence existed to support the jury’s failure to find negligence or that he established negligence
as a matter of law.


 Thus, Cook did not properly preserve his legal sufficiency complaint for our
review. See Tex. R. App. P. 33.1(a). Therefore, we will only address Cook’s assertion that the
jury verdict was against the great weight and preponderance of the evidence. 
      When we review a complaint that a jury finding is contrary to the great weight and
preponderance of the evidence, we must consider and weigh all the evidence. Dyson v. Olin Corp.,
692 S.W.2d 456, 457 (Tex. 1985); In re King’s Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660,
661 (1951). We will set aside the verdict only if it is “so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust.” Dyson, 692 S.W.2d at 457.
      Issue 1 was submitted to the jury as follows:
Did the negligence, if any, of those named below proximately cause the occurrence in
question?
 
“NEGLIGENCE”, when used with respect to the conduct of Sabio Oil & Gas, Inc., as an
owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate
an unreasonable risk of harm created by a premises condition which the owner or occupier
knows about or in the exercise of ordinary care should know about. 
 
The jury answered “no” to the question of whether Sabio or Cook was negligent.
      Buddy Martin, the field supervisor for Sabio at the Colbert well, testified that salt water spilled
from the tanks and corroded and weakened the steps and would “eat them plum up.” Martin stated;
“And when I walked up the stairway, I knew that they were weak, and I would walk one foot on
one side and one on the other, because I didn’t want to fall down and hurt myself.” As a result,
Martin had the stairs repaired. 
      Martin testified that prior to Cook’s fall, he had inspected the stairs and reinforced steps that
appeared weakened by welding metal onto them. He said that he was satisfied that after the repairs,
a person could use the stairs without any danger that the steps would fall apart. Martin testified
that until Cook’s accident, he believed the steps were reasonably safe. 
      Martin also testified that he “had walked up there and seen a hole in the center of one of [the
steps], but it was still, you know stabile, you know. It wasn’t, you know, if it was going to give
way, it would have bent, and it hadn’t bent.” He testified that the Pool drivers walked up and
down the stairs twice a day and should have known if the steps were bad. Cook testified that he
did not notice any problems when he climbed the stairs.
      Martin testified that he didn’t know where Cook fell but a “step broke.” He testified that the
broken step had been rotted out with salt water which caused it to break. He said that he didn’t
know if the broken step was one that had been repaired. Martin said, “We didn’t change every one
of them. We just changed the ones that were bad, you know.”
      The testimony in this case shows that the steps deteriorated because of the salt water which
spilled from the tank. Martin’s testimony reveals that he knew the steps were weak. He undertook
repairs to strengthen the steps. He testified that after the repairs he believed the steps were safe. 
Sabio and Pool employees walked up and down the stairs every day. No one complained about the
condition of the stairs. Martin said that he did not know that the step that broke was a bad step.
      The jury is the sole judge of the witnesses’ credibility and the weight to be given their
testimony. Crow, 951 S.W.2d at 899. We do not sit as a thirteenth juror and substitute our
judgment for that of the jury’s. Id. The jury might have found that Sabio did not know that the
broken step was in bad condition. The jury might have also found that Sabio exercised ordinary
care by repairing the stairs. Further, the jury might have determined that since the stairs had been
repaired, they did not pose an unreasonable risk of harm. 
      Having reviewed all the evidence, we cannot say that the jury’s finding is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.” See Dyson, 692 S.W.2d
at 457. Thus, we overrule the first point of error. 
ADMISSION OF EVIDENCE
      In the second point of error, Cook urges that the court erred in admitting, over his objection,
the testimony of his former wife, Darlene, concerning their marital difficulties and alleged domestic
violence. Point of error three alleges that the court erred in overruling his motion for new trial
based on this testimony. Cook argues that any relevance of this evidence was substantially
outweighed by the prejudicial effect on the jury and caused a verdict against the great weight and
preponderance of the evidence. See Tex. R. Civ. Evid. 403. 
      Darlene’s deposition was read into evidence. Darlene testified that Cook hit her in January
of 1994. Plaintiff’s counsel objected stating that the prejudicial effect of the testimony clearly
outweighed any relevance. The court then gave the following limiting instruction:
Okay. Members of the jury, the witness, in her deposition, is relating an incident of
alleged family violence. And you’re to consider this testimony not for the truth or falsity
of the statements made, but merely as evidence tending to show actions that are dissimilar
to someone suffering from physical injuries. Do you understand the limited effect of the
testimony? (All jurors indicated they understood.)
 
Darlene then testified that Cook fractured her nose. 
      Darlene also testified about a fight in September. The deposition testimony offered by Sabio
is as follows:
[DEFENSE COUNSEL]: Did he [Cook] strike you or hit you in that fight you had in
September?
 
[DARLENE]: Yeah. We were fighting that night. We had done tore up the apartment,
you know. I mean, you know, we were — he was trying to — Well, he had pretty much
told the cops he was trying to keep me off of him because he was injured, but, you know,
he’s a man...
 
[DEFENSE COUNSEL]: What did he do? Could you describe for us what he did?
 
[DARLENE]: It was just a lot of pushing and scratching and, you know, just fighting,
you know. Not a lot of punching. That night he really didn’t physically hurt me. I think
I might have, you know, might have hurt him that night. 
 
Cook then offered portions of Darlene’s deposition. Darlene testified that in September she was
doing the fighting and “he was pretty much just trying to keep me off of him” because he was
injured. Sabio’s offer of Darlene’s deposition ended with counsel’s question: “Is it fair for me to
say that [Cook] has a temper? . . .A pretty good temper?” 
      Cook complains that the limited relevance of this evidence is substantially outweighed by the
danger of unfair prejudice. Evidence is relevant if it has any tendency to make the existence of any
determinative fact more or less probable than it would otherwise be without the evidence. See Tex.
R. Civ. Evid. 401. As Sabio argues, the evidence is somewhat relevant to Cook’s physical
capabilities. 
      A court may exclude relevant evidence, if its probative value is substantially outweighed by
the danger of unfair prejudice. Id. 403. “In weighing the prejudice, we must first examine the
necessity for and probative effect of the evidence.” Schlueter v. Schlueter, 929 S.W.2d 94, 98
(Tex. App.—Austin 1996, writ granted).


 According to Sabio, the evidence was offered to show
that Cook was engaging in physical activities which were inconsistent with his alleged injuries. 
Sabio offered other testimony of Cook’s physical activities, such as riding a tractor, lifting fifty
pound sacks of feed, and knocking pecans out of a tree, which were inconsistent with the injuries
claimed. Thus, the necessity for the testimony concerning marital difficulties and domestic
violence was marginal. Further, Darlene’s testimony is far more probative of marital discord and
Cook’s temper than of Cook’s alleged injuries. We find that the necessity and probative value of
the testimony is limited. 
      We must now determine whether the danger of unfair prejudice substantially outweighed the
probative value of the testimony. “Unfair prejudice” means “an undue tendency to suggest [a]
decision on an improper basis, commonly, though not necessarily, an emotional one.” Fort Worth
Hotel Ltd. Partnership v. Enserch Corp., No. 02-96-046-CV, slip op. at 26, 1998 WL 94603, at
*12 (Tex. App.—Fort Worth Mar. 5, 1998, no pet.) (quoting Turner v. PV Int’l Corp., 765
S.W.2d 455, 471 (Tex. App.—Dallas 1988), writ denied per curiam, 778 S.W.2d 865 (Tex.
1989)); see also Fed. R. Evid. 403 advisory committee’s note. The prejudicial effect of this
testimony would be the negative effect on Cook’s credibility and character. Most jurors would not
think it is appropriate for a husband to hit his wife. Many jurors would not approve of the
combatant nature of Cook’s marriage. The testimony unfairly injects domestic violence and marital
discord into a personal injury case. “Little evidence in a lawsuit will not be prejudicial to at least
one party.” Porter v. Nemir, 900 S.W.2d 376, 381 (Tex. App.—Austin 1995, no writ). However,
we feel that the evidence of fighting between Darlene and Cook is unfairly prejudicial because it
could lead to a decision on an improper or emotional basis. See e.g., Wolfe v. Wolfe, 918 S.W.2d
533, 540 (Tex. App.—El Paso 1996, writ denied). The slight probative value of this evidence is
outweighed by the danger of unfair prejudice. Tex. R. Civ. Evid 403. While we believe that the
jury instruction helped focus the jury on the slight probative value of the evidence, we do not find
that the instruction cured the unfair prejudice of the testimony. Thus, we find that the court erred
in admitting this evidence. However, we do not find that the error probably caused the rendition
of an improper judgment. Tex. R. App. P. 44.1(a)(1).
      Evidentiary rulings will not cause reversal unless the whole case turns on the evidence
improperly admitted or excluded. McEwen v. Wal-Mart Stores, Inc., No. 04-96-896-CV, slip op.
at 7, 1998 WL 86564, at *4 (Tex. App.—San Antonio Feb. 27, 1998, no pet. h.); Wolfe, 918
S.W.2d at 538; Superior Derrick Servs., Inc. v. Anderson, 831 S.W.2d 868, 876 (Tex.
App.—Houston [14th Dist.] 1992, writ denied); Shenandoah Assocs. v. J & K Properties, Inc., 741
S.W.2d 470, 490 (Tex. App.—Dallas 1987, writ denied) (on rehearing). Errors in admitting
evidence will not require reversal unless that evidence controlled the judgment. See Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). With the present record supported by
evidence of inconsistent physical activity by Cook, we cannot say the erroneous evidence was
dominant.
      We overrule the second and third points of error. 
JURY ARGUMENT
      Cook’s fourth point of error alleges that the court erred in denying his motion for new trial
because defense counsel mischaracterized the testimony of Buddy Martin during jury argument and
the jury relied on the statement. During argument, defense counsel made the following remark:
But the one thing he [Cook’s counsel] didn’t contradict at some point, the one thing he
didn’t contradict was the question about: “Did it surprise you when you found out that
the steps had broken?”
 
During deliberations, the jury sent out a note requesting the part of Martin’s deposition where he
stated he felt the stairs were safe and was surprised when they broke. The court reporter then read
a section of Martin’s deposition back to the jury. Later the jury sent out a second note stating that
some of the jurors felt that a portion of the deposition reflected that Martin was surprised the step
broke. 
      In order to obtain a reversal based on improper jury argument, one must prove that the error
was preserved by proper trial predicate. See Standard Fire Ins. Co. v. Reese, 584 S.W.2d 835,
839 (Tex. 1979). In order to preserve a complaint for appellate review, the record must reflect
that a timely objection stating specific grounds was made along with a ruling by the court. Tex.
R. App. P. 33.1(a). 
      Cook’s counsel did not object during the jury argument. He did not object when the jury sent
notes out concerning the testimony. Therefore, the complaint is not preserved for appellate review. 
We overrule the fourth point of error. 
MISTRIAL
      In his fifth point of error, Cook contends that the court erred in denying his motion for mistrial
because the cumulative effect of errors was harmful and caused the rendition of an improper
judgment. Cook’s counsel made a motion for mistrial after the jury sent out a note saying they
could not reach a verdict because they were nine to three. Cook’s counsel said the following: 
Just for the record, I think I need to make a motion for mistrial, that they’re hopelessly
deadlocked. They’ve so indicated they’ve been deliberating since 10:30. It’s
approximately nine minutes to four. Had about an hour for lunch, and plaintiff would
move for mistrial at this point. 
 
The court overruled this motion. 
      Cook apprised the court that he was asking for a mistrial based on a deadlocked jury. The
motion for mistrial was not based on cumulative error. Therefore, we find that the complaint is
not preserved for appellate review because the ground now asserted for mistrial was not presented
to the trial court. See id. We overrule the fifth point of error.
      We affirm the judgment.
 
                                                                               REX D. DAVIS 
 Chief Justice
 
 
Before Chief Justice Davis
      Justice Cummings and
      Justice Vance
      (Justice Vance dissenting)
Affirmed
Opinion delivered and filed June 10, 1998 
Publish